AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

V.                          ASSIGNED JUDGE:

DESIGNATED
MAGISTRATE JUDGE:

TO: (Name and address of Defendant)

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

an answer to the complaint which is herewith served upon you, _____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

July 20, 2018

(B                                                        DATE

AO 440  (Rev. 05/00)  Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

| *Check one box below to indicate appropriate method of service* |
|---|

☐  Served personally upon the defendant.  Place where served: _____

_____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left: _____

☐  Returned unexecuted: _____

_____

_____

☐  Other (specify): _____

_____

_____

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

| DECLARATION OF SERVER |
|---|

     I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                         Date                              *Signature of Server*


                                    _____
                                        *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

## BEFORE THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **INSIGHT SECURITIES, INC., a Delaware corporation,** | ) ) ) | |
| **Plaintiff,** | ) ) ) | **Case No. 18-4925** |
| **v.** | ) ) | |
| **CLODI HOLDINGS LTD. is a British Virgin Islands business entity, AMICORP TRUSTEES (NEW ZEALAND), LIMITED, a New Zealand company, as trustee of THE DOCIL TRUST, a non-US trust for the benefit of Argentinian citizens, AMICORP MANAGEMENT LIMITED, a British Virgin Islands business entity, MADISON ASSETS, LLC, a Grand Cayman company, and DEUTSCHE BANK SECURITIES, Inc., a Delaware Corporation,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Insight Securities, Inc., a Delaware corporation, by and through its undersigned attorneys, and, for its Complaint for Declaratory Relief against Defendants Clodi Holdings Ltd. is a British Virgin Islands business entity, Amicorp Trustees (New Zealand), Limited, a New Zealand business entity, as trustee of The Docil Trust, a non-US trust for benefit of Argentinian citizens, Amicorp Management Limited, a British Virgin Islands business entity, Madison Assets, LLC, a Grand Cayman company, and Deutsche Bank Securities, Inc. a Delaware Corporation, states as follows:

## NATURE OF THE ACTION

1.      This is an action bought by Insight Securities, Inc., a Delaware corporation ("Insight") with its principal place of business in Highland Park, Illinois Insight is a securities broker/dealer duly registered with the Financial Industry Regulatory Authority ("FINRA"). The purpose of this action is to determine its rights and obligations regarding certain securities that were in the account of one of its customers, Clodi Holdings Ltd. is a British Virgin Islands business entity ("Clodi") (founded on October 3, 2016 by Amicorp BVI Limited, a British Virgin Islands business entity).

2.      The $6.1 million (plus) in securities at issue were transferred to Madison Assets, LLC, for further credit to Deutsche Bank Securities, Inc.  Clodi has since alleged that the transfer instructions sent to Insight in its Highland Park office were forged and that the transfer was unauthorized. Moreover, Clodi has demanded that, pursuant to FINRA Rule 11720, Insight reclaim the securities so transferred and return them to Clodi's Insight account.

3.      If such a reclamation is not justified, initiating such a procedure opens Insights to a possible FINRA Rule violation and damage claims by Deutsche Bank and the real owner of the securities.

4.      If the securities at issue are actually stolen, then the failure to initiate a reclamation pursuant to FINRA Rule 11720 could render Insight liable for any losses suffered by Clodi as a result of an unauthorized transfer. Moreover, since any reclamation would no longer involve the transfer of securities or funds from and to

the account of the same beneficial owner, such a transfer of millions of dollars' worth of securities market value transferred could violate 18 U.S.C. § 1956.

5. Therefore, Insight seeks the offices of this Court to declare, *inter alia*:

a. The current legal owner of the securities transferred from Clodi's account at Insight; and

b. Insight's rights and obligations *vis-à-vis* the reclamation demand made upon it by Clodi.

## JURISDICTION AND VENUE

6. This is an action brought pursuant to 28 U.S.C. § 2201 to declare the rights and obligations of the parties hereto.

7. The amount in controversy exceeds $75,000 exclusive of interest and costs.

8. The parties hereto are citizens of different states or countries.

9. Therefore, jurisdiction is conferred upon this court pursuant to 28 U.S.C. §1332.

10. The acts herein described regarding to the opening, maintaining and closing of the subject securities account at Plaintiff in Lake County, Illinois. The instructions received to transfer those securities, which gave rise to the controversies described below, were received in Lake County, Illinois; the instructions to transfer those securities at issue were sent from Lake County, Illinois; the instructions to reclaim those securities was sent to Plaintiff at its office in Lake County Illinois; and

any instruction to reclaim the securities at issue or their value would need to originate from that same office.

11.     Therefore, jurisdiction and venue is properly before the United States District Court for the Northern District of Illinois, Eastern Division.

## PARTIES AND ENTITIES

12.     Amigroup Group ("Amigroup") is a Hong Kong-based Group located at Room 2110, 21/F, Wing On Centre 111, Connaught Road, Central **Hong Kong** and holds itself out as an independent global service provider of a broad range of assurance, administrative, legal, corporate secretarial and support services that provides services to a range of mostly corporate, but sometimes also high-net-worth clients around the world. Amigroup styles itself as an entity with an international network of 40 plus offices in over 30 countries", one of which is listed as Amicorp New Zealand, Limited, a New Zealand limited liability company ("Amicorp NZ"), with its principal place of business also in Auckland, New Zealand. *See* Exhibit "A" hereto, which is incorporated by reference herein.

13.     Amicorp Trustees (New Zealand) Limited, is a New Zealand limited liability company ("Amicorp Trustees") with its principal place of business in Auckland, New Zealand.

14.     Clodi Holdings Ltd. is a British Virgin Islands business entity ("Clodi") (founded on October 3, 2016 by Amicorp BVI Limited, a British Virgin Islands business entity) with its principal place of business located at the Marcy Building 2nd Floor, Purcell. Estate Road Town, Tortola, British Virgin Islands.

15. Amicorp Management Limited, is a British Virgin Islands business entity ("Amicorp Management") with its principal place of business located at the Marcy Building 2nd Floor, Purcell. Estate Road Town, Tortola, British Virgin Islands is the sole director of Clodi.

16. Diego Alejandro Saul Romay ("Romay") is a resident and citizen of Argentina who is the settlor of the Docil Trust which was established on November 23, 2016 and is an *irrevocable* trust. Amicorp NZ as trustee of The Docil Trust. The beneficiaries of The Docil Trust are unknown at this time.

17. The Docil Trust is the sole owner of Clodi as a result of Clodi issuing 50,000 shares to The Docil Trust. *See* Exhibit "B" hereto, which is incorporated by reference herein.

18. Madison Assets, LLC, is a Grand Cayman company ("Madison") with its principal place of business in Grand Cayman, Cayman Islands.

19. Deutsche Bank Securities, Inc. ("DBS"), is a Delaware Corporation a FINRA registered securities broker/dealer with its principle place of business New York, New York.

## CLODI'S ACCOUNT AT INSIGHT

20. On October 3, 2016, Clodi appointed Amicorp Management, as its sole director. See Exhibit "C" hereto, which is incorporated by reference herein.

21. On December 15, 2016, Amicorp Management entered into a Portfolio Management Agreement with Total Advisors LLC ("Total Advisors") is a Cayman Island registered investment advisor with its principal place of business in the

Cayman Islands. *See* Exhibit "D" hereto, a copy of which is attached hereto and incorporated by reference herein.

22.     On December 20, 2016, Amicorp Management, acting on behalf of Clodi, submitted a new account application to Insight that was accepted on January 3, 2017. *See* Exhibit "E" hereto, which is incorporated by reference herein.  Insight assigned the account number QCU****4 to the Clodi account.

23.     Amicorp Management then provided Total Advisors with a limited power of attorney over the Clodi account.  *See* Exhibit "F" hereto, a copy of which is incorporated by reference herein.

24.     The Clodi account was then funded through a transfer of securities by Deutsche Bank from the account of Ponti Levine Corporation, a Panamanian corporation with its principal place of business at Calle 61 Este, Panama City, Panama ("Ponti"), which, is owned by Samastiti Trust, a revocable trust, of which Romay is settlor and trustee.

25.     The graphic representation of this transfer is contained in the chart prepared by Insight's compliance function during its due diligence investigation of Clodi:



**THE TRANSFER REQUESTS**

26.     On March 8, 2018 Insight received instructions from Amicorp Management to deliver various of Docil's assets valued at $5.1 million held in the name of Clodi Holdings to Madison for the benefit of Codi Holdings' account at Madison. *See* Exhibit "G" hereto, which is incorporated by reference herein. The instructions specifically stated that the securities were being transferred from Clodi's account at Insight to Clodi's account at Madison, *i.e. "FCC Clodi Holdings Limited" for "ACC # AP***3. Id.*

27.     On March 15, 2018, Insight received another direction from Amicorp Management to deliver $1 million plus worth of Clodi's holdings to Madison (*see* Exhibit "H" hereto) *"FCC Clodi Holdings Limited" for "ACC # AP***3. Id.* Since both of Clodi's requests were for a horizontal transfer, *i.e.* from one account to another of the *same account holder*, Insight immediately proceeded to act on these instructions.

28. On May 16, 2018, Clodi informed Insight that it was "in the process" of terminating its investment management agreement with Amicorp Management and authorized its representative at "Amicorp New Zealand Limited to be the main contact person on our behalf and authorized to request information, documents etc. and discuss all matters pertaining to the above Accounts."

29. Unknown to Insight, both the March 8 and March 15, 2018 transfers were ultimately sent to the account of Rado Limited (AC #*****91) at Deutsche Bank:



30. On information and belief, the transfer of the securities from Clodi's account at Insight to the account of a third-party (*i.e.* Rado, Ltd.) rather than to a Clodi account could not have occurred without the assistance of one or more employees of Madison and Deutsche Bank.

## THE REQUEST TO RECLAIM THE SECURITIES

31.     On July 2, 2018, attorneys for Romay asserted to Insight that the above transfers of Clodi's assets were unauthorized and demanded that Insight, pursuant to FINRA Rule 11720, reclaim the securities so transferred. *See* Exhibit "D" hereto.

32.     FINRA Rule 11720 permits the reclamation, within thirty-months, of the transfer of lost or stolen securities.

33.     Since Romay had irrevocably transferred the assets to Docil, there is a question whether can legally made a FINRA Rule 11720 on Insight regarding Clodi's account opened by Amicorp Management when Romay and Docil are not listed as customers on the account documentation.

34.     If the reclamation is not justified, initiating such a procedure opens Insights to a possible FINRA Rule violation and damage claims by Deutsche Bank and the current owner of the securities if that is not Clodi.

35.     If the securities at issue are actually stolen, then the failure to initiate a reclamation pursuant to FINRA Rule 11720 could render Insight liable for any losses suffered by Clodi as a result of the transfers.

36.     Since any reclamation would no longer involve the transfer of securities or funds from the account of the same beneficial owner, the transfer of the $6.1 million dollars (plus) worth of securities transferred to Madison for Clodi's account could violate 18 U.S.C. § 1956.

37.     An actual controversy exists between Insight and Clodi over whether the July 2, 2018 request from the attorneys for Romay is a valid FINRA Rule 11720

reclamation request because it was not made by or on behalf of Amicorp NZ, the trustee of Docil Trust that owns Clodi (since the relationship with Amicorp Management, the agent and sole director of Clodi that Clodi authorized to open its Insight account and the only agent of Clodi authorized to act regarding Clodi's Insight account, was apparently terminated in May 2018) is a valid FINRA Rule 11720 request.

38. An actual controversy exists between Insight on the one hand and Amicorp Trustees, The Docil Trust, and Amicorp Management on the other over:

    a.  Whether the March 9 and 15, 2018 transfer instructions received by Insight were valid instructions under FINRA Rule 11720;

    b.  Whether Amicorp NZ and/or Amicorp Management delegated the authority to initiate the March 8 and March 15, 2018 transfer instructions to Total Advisors or to some other actual or apparent agent; and/or

    c.  If the March 8 and 15, 2018 transfer requests were actually unauthorized, was Insight entitled to rely on those documents.

39. An actual controversy exists between Insight on the one hand and Madison and Deutsche Bank on the other as to whether Madison and Deutsche Bank are liable, jointly or severally, to Insight if the March 8 and March 15, 2018 transfers were not authorized by Clodi and Insight did not have the right to rely on those transfer requests.

WHEREFORE, Insight prays that this Court declare:

A. Whether the July 2, 2018 demand by the attorney's for Romay that Insight institute a FINRA Rule 11720 reclamation produce is a valid demand under that rule; and/or

B. Whether the March 8 and March 15, 2018 transfers were authorized by Clodi or its actual or apparent agents;

C. Whether Insight had the right to rely on the March 8 and March 15, 2018 transfer request even if they were unauthorized forgeries.

D. If the March 8 and March 15, 2015 transfers were not authorized by Clodi or its actual or apparent agents, whether Insight has a right to indemnity from Madison and Deutsche Bank, jointly or severally, for any cost and damages payable to Clodi.

July 19, 2018                                        Respectfully submitted,

                                                     One of Plaintiff's attorneys

Nicholas P. Iavarone, Esq.
The Iavarone Law Firm, P.C.
33 N. LaSalle Street, Suite 1400
Chicago, Illinois 60602
Illinois Bar. No. 1299220
(312) 637-9466
(800) 417-0580 (ax)
niavarome@iavaronefirm.com

# Exhibit "A"

# GLOBAL LOCATIONS &
## NETWORK

We are a Hong Kong based Group with an international network of 40 plus offices in over 30 countries, offering access to the expert knowledge and skills of professionals globally. The breadth of our network ensures that there is always an Amicorp office close to you, offering the full range of Group Services. An added advantage is the seamless connection between our offices and professionals around the world. Every Group office can effortlessly connect to all other offices in Amicorp's network.



# OUR **OFFICES**

| | | | |
|---|---|---|---|
| Argentina | Curaçao | Monaco | Spain |
| The Bahamas | Cyprus | The Netherlands | Switzerland |
| Barbados | Hong Kong | New Zealand | Taiwan |
| Brazil | India | Panama | United Arab Emirates |
| British Virgin Islands | Lithuania | Peru | United Kingdom |
| Cayman Islands | Luxembourg | The Philippines | United States |
| Chile | Malta | The Seychelles | Uruguay |
| China | Mauritius | Singapore | |
| Colombia | Mexico | South Africa | |

# Exhibit "B"

BVIBC No. 1925060

## THE BVI BUSINESS COMPANIES ACT 2004

### WRITTEN RESOLUTIONS OF THE DIRECTOR
of

### Clodi Holdings Ltd.
("the Company")

The undersigned being the director of Clodi Holdings Ltd., a British Virgin Islands Business Company established and operating under the laws of the British Virgin Islands, hereby consents to the adoption of the following resolutions:

1. RESOLVED, that the registered office of the Company will be situated at Marcy Building, 2nd Floor, Purcell Estate, P.O. Box 2416, Road Town, Tortola, British Virgin Islands.

2. RESOLVED, that the registered agent of the Company will be Amicorp B.V.I. Limited of Marcy Building, 2nd Floor, Purcell Estate, P.O. Box 2416, Road Town, Tortola, British Virgin Islands.

3. RESOLVED, that the seal,
an impression of which appears on these resolutions,
be and hereby is adopted as the seal of the Company.

4. RESOLVED that the records and underlying documentation of the Company shall be maintained and kept by the Company at Marcy Building, 2nd Floor, Purcell Estate, P.O. Box 2416, Road Town, Tortola, British Virgin Islands. In the event that there is a change in the location of these records then the Company shall provide its registered agent with the physical address of the new location of these records within 14 days of the change of location.

5. RESOLVED, to issue 50,000 with par value shares in the Company, as follows:

   Share Certificate No. 1 for 50,000 shares to Amicorp Trustees (New Zealand) Limited as Trustee of the Docil Trust

6. RESOLVED, to record the issue of the shares in the Company's share register.

Adopted and signed on 23rd November 2016.

Amicorp Management Limited
Director

# Exhibit "C"

**NAME COMPANY:** Clodi Holdings Ltd.

Incorporation date: 3 October 2016

## REGISTER OF DIRECTORS

| NAME AND ADDRESS OF DIRECTOR | PREVIOUS NAMES OR ALIAS | ADDRESS FOR SERVICE OF DOCUMENTS | DATE AND PLACE OF BIRTH / DATE OF INCORPORATION AND REGISTRATION NUMBER | | NATIONALITY / PLACE OF FORMATION | DATE OF APPOINTMENT | DATE CEASING TO ACT AS DIRECTOR |
|---|---|---|---|---|---|---|---|
| Amicorp Management Limited Marcy Building, 2nd Floor Purcell Estate, P.O. Box 2416 Road Town, Tortola British Virgin Islands | N/A | Marcy Building, 2nd Floor Purcell Estate, P.O. Box 2416 Road Town, Tortola British Virgin Islands | Date of Incorporation: | 17/06/2002 | British Virgin Islands | 23/11/2016 | |
| | | | Registration Number: | 500000 | | | |

# Exhibit "D"

# TOTAL ADVISORS LLC
# PORTFOLIO CONSULTING AGREEMENT

### (Discretionary)

**THIS PORTFOLIO CONSULTING AGREEMENT** (the "Agreement"), made as of 15 DECEMBER 2016 by and between the undersigned client who is designated on Exhibit A (referred to herein as "Client") and Total Advisors LLC ("TOTAL"), a Cayman Island Registered Adviser and Consultant, located at 27 Hospital Road, Cayman Corporate Center, 5th Floor, P.O. Box 1748, Grand Cayman, Cayman Islands.

## WITNESSETH:

**IN CONSIDERATION** of the mutual covenants contained herein, the parties hereto agree as follows:

### 1.    Investment Management:

Client hereby employs TOTAL as Client's investment adviser and consultant during the term of the Agreement, and TOTAL agrees to continuously supervise, on a discretionary basis, the investment management of the assets held pursuant to Client's direction in an investment account (referred to as the "Account" or "Client Account"), which account is designated and set out above. The custodian designated on Exhibit "A" (the "Custodian") shall maintain custody of all Account assets. TOTAL shall have the sole authority to act for Client with respect to the acquisition, retention, management and disposition of assets, securities and investments in the Account, in accordance with the information provided by Client, including any reasonable investment restrictions imposed by Client. Client shall promptly notify TOTAL in writing of any changes in Client's investment objectives, investment restrictions, and or financial situation.

### 2.    Advisory Services:

During the term of this Agreement, TOTAL shall:

(a) Place orders or otherwise give instructions, without prior consultation with or notification to Client, for the purchase, sale, exchange or other acquisition or disposition of securities, which by definition shall include options, on behalf of and for the Account, it being understood that TOTAL shall have complete and sole discretion as to the nature, amount and timing of all such transactions, subject to the provisions set forth herein.

(b) Direct that all securities purchased for the Account be registered in the name of and delivered to Custodian or its nominee, and that all proceeds from the sale of securities and assets in the Account are delivered to Custodian or its nominee.

(c) In addition to Investment Advisory and Consulting Services, TOTAL will provide client administrative services in regards to their securities and assets in the aforementioned paragraph.

### 3.    Limited Trading Authority:

So that TOTAL may perform its function hereunder, Client grants limited discretionary power to TOTAL and appoints TOTAL their agent and attorney-in-fact thereby authorizing and empowering TOTAL to do all or any of the following on behalf of Client: (i) to purchase and sell, to exchange, to subscribe

or otherwise exercise rights for, as well as to cause to be presented for redemption on call, stocks (both common and preferred), options, mutual funds, and warrants, or rights of domestic or foreign corporations, both before and after issuance, notes, debentures and other evidences of indebtedness issued or to be issued; and (ii) to furnish TOTAL with all powers of attorney and documentation as may be necessary for TOTAL to carry out the discretionary authority given TOTAL herein, but no such powers shall be construed to authorize TOTAL to take any action not authorized herein including delivery of securities, payment of monies other than for fees related to Client'(s) accounts, or any other transfer from Client's account without the specific written authorization of Client.

**4.      Investment Objectives and Limitations:**
       Client hereby represents and acknowledges that it has informed TOTAL in writing of its investment objectives and limitations for its portfolio, including without limitation, acceptable levels of investment risk, and to such end wishes to follow the investment advice of TOTAL. Client will advise TOTAL in writing of any changes in Client's investment objectives or the limitations on TOTAL's discretion. Furthermore, Client will give TOTAL prompt written notice if Client believes that any investment in the Account violates Clients objectives or limitations.

**5.      Trade Execution:**
   (a) *Cross Transactions:*
       TOTAL may, from time to time, when executing transactions on behalf of the Client, also act as Advisor for another person on the other side of the transaction for which it will be compensated by both parties. Client hereby acknowledges that when acting as an agent for both parties in connection with such "agency cross transactions," TOTAL will have a potentially conflicting division of loyalties and responsibilities. Client hereby authorizes TOTAL to effect agency cross transactions on behalf of the Account, until such time as this authorization is revoked by written notice from Client to TOTAL. Notwithstanding the above, TOTAL will obtain the consent of client prior to the settlement of any agency cross transaction. SINCE THE CUSTODIAN OF CLIENT(S)' SECURITIES IS LOCATED IN THE UNITED STATES, THIS AUTHORIZATION IS GIVEN PURSUANT TO THE UNITED STATES SECURITIES EXCHANGE COMMISSION REGULATION 206(3) -2 OF THE INVESTMENT ADVISERS ACT OF 1940, AS AMENDED (THE "ADVISERS ACT") AND MAY BE WITHDRAWN AT ANY TIME AT CLIENT'S SOLE DISCRETION.

   (b) *Broker/Dealer Compensation:*
       TOTAL may enter orders for securities transactions for the Account with such unaffiliated brokers, dealers, or issuers as TOTAL may select in its sole discretion, and executed a Master Consulting Agreement which such broker/dealer. Orders will be entered for execution on such markets, at such prices, and at such rates of broker/dealer compensation as TOTAL deems appropriate. In selecting brokers or dealers, and in determining appropriate levels of broker/dealer compensation, TOTAL will take into consideration not only the available prices and rates of broker/dealer compensation, but also other relevant factors, including execution capabilities and the range and quality of research and other services provided by such brokers or dealers that are expected to provide TOTAL with lawful and appropriate assistance in TOTAL's investment decision-making process. Client understands that under some circumstances the broker/dealer compensation it pays may exceed the compensation that could be obtained from another broker or dealer, particularly if such other broker or dealer were not providing research or other services. Client acknowledges that such brokers or dealers may profit from such transactions by charging their usual and customary rates of compensation, including mark-ups or mark-downs on principal transactions.

   (c) Client authorizes that all or a portion of the Assets in the Account may consist of cash. Furthermore, Client acknowledges and accepts that dividends and interest on investments shall be paid directly into the Account and may be treated as cash available for investment in the Account.

**6.**   **Compensation:**
   (a) TOTAL's portfolio consulting (advisory fee) is compensation for services rendered hereunder ("Investment Advisory Fee") paid by the Broker/Dealer chosen by the Advisor and whom has executed a Master Consulting Agreement with the Advisor.
   (b) TOTAL's administrative services fee in regards to the assets in the aforementioned paragraphs shall be billed to Client at a flat $ __n/a____ per annum.

**7.**   **Conflicts of Interest and Obligations to Others:**

   Client hereby acknowledges that TOTAL's services under this Agreement are non-exclusive, and that TOTAL shall be free to render the same or similar services to other clients. Client further acknowledges that TOTAL renders investment advice based upon each client's representations as to the client's investment objectives. Therefore, TOTAL, in the performance of its advisory duties, may give advice to other clients and take action which may differ from the advice given, or the timing and nature of the action taken, with respect to the Account. Nothing in this Agreement shall be deemed to impose upon TOTAL any obligation to purchase or sell or to recommend for purchase or sale for the Account, any security or other property which it or its affiliates may purchase or sell for their own account or for the accounts of any other client, if in the sole discretion of TOTAL, it is for any reason undesirable or impractical to take such action or make such recommendation for Client's Accounts. Client also acknowledges that TOTAL may charge other clients different fees, which may be higher or lower than the fees charged with respect to the Account for similar services. Recommendations which TOTAL may make will be based upon information obtained from sources which it deems to be reliable. It is understood, however, that nothing herein shall in any way constitute a waiver or limitation of any of the obligations which TOTAL may have under the securities laws of the United States where the Client's assets reside.

**8.**   **Account Statements:**

   The Custodian will give Client full access at all times and monthly statements through Custodian's online internet service which in some instances may result in a separate fee from the Custodian for such services.

**9.**   **Custody of Assets:**

   Custodian shall at all times be responsible for the physical custody of the assets held in the Account and for the collection of interest, dividends, and other income attributable to the assets of the Account, together with other custodial functions customarily performed with respect to securities brokerage accounts. TOTAL shall have no liability for any acts or omissions of Custodian.

**10.**   **Instructions from Client:**

   TOTAL may rely on all instructions (whether oral or written) given by Client or its agents which TOTAL believes to be genuine. Instructions may be given to TOTAL: (i) by Client directly, if Client is an individual; or (ii) if Client is a corporation, by any officers or agents authorized by a resolution of Client's Board of Directors, a copy of which will be given to TOTAL. TOTAL may rely on such resolution until written notice to the contrary is delivered to TOTAL by Client. Client agrees to hold harmless, and to indemnify and defend, TOTAL, as well as any of its officers, directors, shareholders, affiliates, employees, agents and trustees, against any and all losses sustained by TOTAL resulting from and against any and all claims, liabilities, losses, damages, charges, costs, fees and expenses (including, without limitation, attorneys' fees and costs, including fees of attorneys who may be TOTAL 's employees or employees of TOTAL's affiliates) arising out of or in connection with any action taken in reliance upon any instruction or inquiry believed genuine. TOTAL reserves the right to refuse to act on any oral instructions.

**11. Representations and Acknowledgements:**

(a) Client Acknowledgement:

Client represents and warrants to TOTAL that (i) the person who signs this agreement is authorized to negotiate terms and to enter into this Agreement and other related agreements on Client's behalf, (ii) the terms of this Agreement do not violate any obligations by which Client is bound, whether by contract, operation of law or otherwise, and (iii) all information furnished to TOTAL in connection with the opening of the Account and all documents supplied by Client in this regard, including financial statements, are true, complete and correct. TOTAL is entitled to rely on this information until TOTAL receives written notice of any change, which Client agrees to furnish promptly should any material changes occur.

(b) Advisory Representation:
TOTAL represents that it is an investment adviser/consultant registered in the Cayman Islands.

(c) Client acknowledges that any investment advice given by TOTAL is not affiliated in any way with Broker/Dealer listed in Exhibit A nor any of its principals, and that Broker/Dealer or any of its principals will not be responsible or liable for any acts or omissions of TOTAL in providing services to client pursuant to this agreement, and that all obligations, liabilities or responsibilities of Broker/Dealer to client, if any under this agreement shall be limited to those that may exist pursuant to the terms of any customer agreement between client and Broker/Dealer or its clearance agent. Client also acknowledges that Broker/Dealer has contracted to compensate TOTAL for its services on behalf of client.

**12. Proxies and Other Legal Notices.**
TOTAL shall not render any advice or take any action on behalf of Client with respect to securities or other investments held in the Account, or the issuer's thereof, which become the subject of any legal proceedings, including bankruptcies. Client retains the right and obligation to take any action relating to the securities held in the Account. Furthermore, except to the extent otherwise required by United States securities law, TOTAL shall not take any action or render any advice with respect to the voting of proxies solicited by, or with respect to, the issuers of any securities held in the Account. Client hereby expressly retains the right and obligation to vote proxies relating to the securities held in the Account; provided, however, that Client may delegate said rights and obligations to a properly authorized agent.

**13. Assignment and Termination:**
No assignment of this Agreement shall be made by TOTAL without the prior written consent of Client. This Agreement may be terminated by either party at any time by thirty (30) days prior written notice to the other. Any such termination shall not, in any case, affect or prevent the consummation of any transaction initiated prior to the time such cancellation becomes effective.

**14. Confidential Agreement:**
All information, recommendations and advice furnished by TOTAL to Client under this Agreement shall be regarded as confidential, shall be used by TOTAL solely in connection with the advisory services provided to Client, and will not be disclosed to third parties unless authorized by Client, or required by law.

**15.  Provisions of General Applications:**

(a) This Agreement is intended by the parties as a final expression of this Agreement and intended to be a complete and exclusive statement of the agreement and understanding of the parties hereto in respect of the subject matter contained herein. There are no restrictions, promises, warranties or undertakings, other than those set forth or referred to herein. This Agreement supersedes all prior agreements and understandings between the parties with respect to such subject matter.

(b) In the event that any one or more of the provisions contained herein, or the application thereof in any circumstances, is held invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision in every other respect and of the remaining provisions hereof shall not be in any way impaired or affected, it being intended that all of the parties' rights and privileges shall be enforceable to the fullest extent permitted.

(c) This Agreement may be executed in any number of counterparts and by the parties hereto in separate counterparts, each of which so executed shall be deemed to be an original and such counterparts together shall constitute one and the same contract.

(d) All notices and other communications provided for or permitted hereunder shall be made by hand delivery, certified mail-return receipt requested, telefax, telecopier, or air courier guaranteeing overnight delivery to (i) Client, to the address set forth on Exhibit A; or (ii) if to TOTAL to: Total Advisors LLC; or (iii) to such other address or addresses as may be designated by either party by written notice to the other.

All such notices and communications shall be deemed to have been duly given: at the time delivered by hand, if personally delivered; five business days after being deposited in the mail, postage prepaid, if mailed; when answered back if telexed, when receipt acknowledged, if telecopied; and on the next business day, if timely delivered to an air courier guaranteeing overnight delivery.

(e) This Agreement may be modified or amended only by an instrument in writing signed by duly authorized representatives of both TOTAL and Client. Waiver by either party of any obligation of the other party does not constitute a waiver of any further or other obligation of such other party.

(f) In the event that the Account is owned by more than one person, all of the express and implied obligations of the Client under this Agreement will be deemed to be joint and several obligations.

(g) TOTAL is committed to comply with U.S. Statutory and regulatory requirements designed to combat money laundering and terrorist financing. The USA Patriot Act requires that certain financial institutions obtain certain identification documents or other information in order to comply with their customer identification procedures. Until Client provides TOTAL with certain required information or documents, TOTAL may not be able to enter into the advisory relationship described herein.

*The Remainder of Page Left Intentionally Blank – Execution Page Follows*

**IN CONSIDERATION OF TOTAL ADVISORS LLC** accepting client's account, client hereby acknowledges having read, understood and agreed to the terms and conditions set forth herein.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date first above written.

**Acknowledged,**

Signature: _____          Signature: _____
Pedro J. Garcia and Felicia Parsons-
Client: Authorised Signatories for Amicorp Management Limited          Client: _____

Date: 15 DECEMBER 2016          Date: _____

Firm: **Total Advisors LLC**

By: _____

Name/Title: FRANCISCO NERI

Date: 12/21/2016

**EXHIBIT A**

**CLIENT DESIGNATION & ACCOUNT(S) AND CUSTODIAN(S) INFORMATION**

**Effective Date:**
12/21/2016

**Client Information:**

**Client Name(s):** CLODI HOLDINGS LTD
**Client Address:**

MARCY BUILDING 2ND FLOOR PURCELL ESTATE ROAD TOWN

TORTOLA BRITISH VIRGIN ISLANDS

**Email Address(s):**

**Account:**

**Broker/Dealer:** *Insight Securities, Inc.*

**Account Number:**   Q  G  U   0  3  4  0  4  5

**Custodian Name:**   Pershing, LLC

**Account Title:**   CLODI HOLDINGS LTD

**Acknowledged,**

| | |
|---|---|
| Signature: | Signature: |
| Client: ? | Client: |
| Date: ? | Date: |

Firm: **Total Advisors LLC**

By:

Name/Title: ~~FRANCISCO~~ NERI

Date: 12/21/2016

# Exhibit "E"



**InSight**
SECURITIES

CUSTOMER NEW ACCOUNT AGREEMENT FORM

BASIC INFORMATION

**Account Number** Q G U 0 3 4 0 4 5

**Custodian** ☐ JPMCC    ■ Pershing

**Account Type**
☐ Individual    ☐ Custodial    ☐ JTWROS    ☐ JTIC    ☐ Retirement – Specify __
☐ Sole Proprietorship    ☐ Partnership    ■ Corporation    ☐ Trust    ☐ Estate
☐ Bank or Trust Co    ☐ Fund    ☐ Not-for-Profit    ☐ State Agency    ☐ Other – Specify _____

Do you or you as beneficial owner have other accounts with US firms? ☐ YES    ■ NO
If Yes, please identify _____

ACCOUNT HOLDER INFORMATION

**ACCOUNT NAME** (In Full)
CLODI HOLDINGS LTD.

**DOB / Incorporation**
3 OCTOBER 2016

**SSN / TIN**

Form of ID _____    ID# 19205060

Country of Citizenship British Virgin Islands

Date of Expiration _____

Marital Status: ☐ Single    ☐ Married    ☐ Civil    ■ NA    Number of Dependents _____

**JOINT ACCOUNT NAME** (In Full)
**OR NAME OF MINOR** (if Custodial Account)
AMICORP MANAGEMENT LIMITED

**DOB / Incorporation**
06.17.2002

**SSN / TIN**

Form of ID _____    ID# 50000

Country of Citizenship _____

Date of Expiration _____

Marital Status: ☐ Single    ☐ Married    ☐ Civil    ☐ Other_____    Number of Dependents _____

Contact Phone Numbers _____

Email Address _____

*Attach copies of all applicable IDs.*

**LEGAL ADDRESS**
Marcy Building, 2nd Floor, Purcell Estate

P.O. Box 2416, Road Town, Tortola

British Virgin Islands

☐ Business    ☐ Residence    ☐ Other – Specify _____

**MAILING ADDRESS** (if different from legal address)

☐ Business    ☐ Residence    ☐ Other – Specify _____

NAF JK 02-2015 V6.3.1                    1



**InSight**
SECURITIES

CUSTOMER NEW ACCOUNT AGREEMENT FORM

## ACCOUNT INFORMATION

TRADING TYPE: ☐ Cash ☐ Margin
MONEY MARKET: Checks and/or Debit Cards ☐ YES ☒ NO
\* Account is an Investment Account, not Checking Account, not FDIC-insured

PRIMARY INVESTMENT OBJECTIVE: ☐ Capital Preservation ☐ Income ☒ Growth ☐ Trading Profits

☐ Speculation ☐ Other _____

RISK TOLERANCE: ☐ Conservative ☒ Moderate ☐ Aggressive

TIME HORIZON: ☐ Less than 2 years ☐ 2-5 years ☐ 5-10 years ☒ Over 10 years

INVESTMENT EXPERIENCE (Enter number of years): Stocks __1+__ Bonds or other Fixed Income __1+__

Mutual Funds __1+__ Certificates of Deposit __1+__ Margin __1+__ Options __1+__ Other (Describe) _____

SPECIAL HANDLING INSTRUCTIONS FOR ACCOUNT _____

SOURCE OF WEALTH:
☐ Employment ☒ Inheritance ☐ Investment ☐ Other _____

**Third Party Trading Identification**\* (Additional authorization required)

☒ FINANCIAL PROFESSIONAL:
Name __TOTAL ADVISORS LLC__
Address _____
Copy of Investment Advisory Contract submitted with this form? ☒ Yes ☐ No

☐ INDIVIDUAL THIRD-PARTY TRADING AUTHORIZATION:
Name _____
Address _____
Complete Additional Account Holder Information

## DECISION-MAKING (CHECK ALL THAT APPLY)

☒ I CONSULT WITH MY BROKER, INVESTMENT ADVISER, CPA OR OTHER FINANCIAL PROFESSIONAL.
☐ I GENERALLY MAKE MY OWN DECISIONS AND/OR CONSULT WITH MY CO-APPLICANT(S).
☐ I DISCUSS INVESTMENT DECISIONS WITH FAMILY AND/OR FRIEND.

\*If applicable

NAF JK 02-2015 V6.3.1

2



**InSight**
**SECURITIES**

CUSTOMER NEW ACCOUNT AGREEMENT FORM

## ACCOUNT HOLDER INFORMATION SECTION

Employment Status:

APPLICANT: ☐ Employed    ☐ Self-Employed    ☐ Not Employed    ☐ Retired

☐ Student    ☐ Other Bus Company

Employer _____ Years with this employer _____
Business Address _____
Job Title: _____ Occupation _____
Business Phone Number _____

CO-APPLICANT: ☐ Employed    ☐ Self-Employed    ☐ Not Employed    ☐ Retired

☐ Student    ☐ Other _____

Employer _____ Years with this employer _____
Business Address _____
Job Title: _____ Occupation _____
Business Phone Number _____

## HOUSEHOLD FINANCIAL BACKGROUND

**Primary Account Holder Information**

Annual income from all sources    $ 600000
Tax Rate (Highest marginal rate) _____ 0 _____ %

Net Worth (excluding residence) $ 5,000,000
Total Liquid Net Worth (cash and liquid investments only)
$ 500,000
List other outside investment holdings _____

Bank Name _____
Checking/Savings Acct# _____
Describe your current financial situation and/or your financial needs. _____
_____
_____

**Additional Account Holder Information, if applicable**

Annual income from all sources    $ 200,000
Tax Rate (Highest marginal rate) _____ 0 _____ %

Net Worth (excluding residence) $ 1,000,000
Total Liquid Net Worth (cash and liquid investments only)
$ 300,000
List other outside investment holdings _____

Bank Name _____
Checking/Savings Acct# _____
Describe your current financial situation and/or your financial needs. _____
_____
_____

## INDUSTRY AND OTHER AFFILIATIONS

*Are you, your spouse or any other immediate family members including parents, in-laws, siblings and dependents -*

|  | Y | N |
|---|---|---|
| 1. Employed by or associated with the securities industry? | ☐ | ☐ |
| 2. An officer, director or 10% or more owner of a public entity? | ☐ | ☐ |
| 3. A senior military governmental or political official in a non-US country. | ☐ | ☐ |

If so what position and which country? _____



InSight
SECURITIES

CUSTOMER NEW ACCOUNT AGREEMENT FORM

**ARBITRATION:**

THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE.  BY SIGNING AN ARBITRATION
AGREEMENT THE PARTIES AGREE AS FOLLOWS:

  A.    ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE
RIGHT TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS
FILED.

  B.    ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT
REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

  C.    THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS, AND OTHER DISCOVERY
IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS.

  D.    THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD, UNLESS, IN AN ELIGIBLE
CASE, A JOINT REQUEST FOR AN EXPLAINED DECISION HAS BEEN SUBMITTED BY ALL PARTIES TO THE PANEL AT LEAST
20 DAY PRIOR TO THE FIRST SCHEDULED HEARING DATE

  E.    THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE
AFFILIATED WITH THE SECURITIES INDUSTRY.

  F.    THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN
ARBITRATION.  IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN
COURT.

  G.    THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS
THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

ARBITRATION AGREEMENT:

ANY CONTROVERSY BETWEEN YOU AND US SHALL BE SUBMITTED TO ARBITRATION BEFORE THE FINANCIAL
INDUSTRY REGULATORY AUTHORITY.
NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY
PREDISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS
ACTION; OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO
ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL; (I) THE CLASS CERTIFICATION IS DENIED; (H)
THE CLASS IS DECERTIFIED; OR (III) THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT.  SUCH
FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS
UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.  THE LAWS OF THE STATE OF NEW YORK
GOVERN.



**InSight**
SECURITIES

CUSTOMER NEW ACCOUNT AGREEMENT FORM

**Warranties and Representation.** Customer warrants and represents to Broker/dealer that

a. Customer has the required legal capacity and is authorized to enter into this Agreement.
b. Customer will provide Broker/Dealer with all necessary information, clearances, approvals, and authorizations from third parties to open accounts and effect transactions in securities under this Agreement.
c. Customer will be the owner of the securities purchased, held and sold by Customer through Broker/Dealer and it's clearing firm and
d. The information contained on the Information Sheet, which is attached hereto as Schedule A and incorporated herein by reference, is complete and accurate.

**Risk of Loss.** Customer understands and agrees that there are risks of possible loss associated with a brokerage Account and securities purchased or sold for the Account. It is understood that Broker/Dealer will be liable only for acts or omissions caused by Broker/Dealer's willful misfeasance, bad faith, gross negligence, or recklessness in the performance of the obligations under this Agreement.

**Indemnification.** Customer agrees to indemnify and hold harmless Broker/Dealer and all of its officers, directors, employees, agents, and representatives (collectively, Agents) against any and all claims, losses, penalties, fines, forfeitures, judgments, costs, fees, expenses, reasonable attorney fees, and related litigation costs, fees, and expenses and amounts actually reasonably incurred in settlement that result from:

a. Any act of omission constituting gross negligence, willful misconduct, or breach of fiduciary duty by Customer or, if applicable, any officer, director, partner, agent, or employee of Customer in connection with Customers performance under the Agreement;
b. Complying with any regulatory request made by a governmental agency regarding the Account or the Customer. Customer acknowledges that such regulatory request may be made and authorizes Broker to provide all necessary information regarding the Account to comply with such request without notice to Customer; and
c. Complying with any subpoena, court order, judgment or other judicial or legal process relating to the Account or Customer, which compliance may be undertaken without notice to Customer.

Under the penalties of perjury, I certify that the information provided on this form is true, correct and complete. In consideration of your accepting this account, I hereby acknowledge that I have read, understand and agree to the terms set forth in the Customer Agreement, including the predispute arbitration clause as found on page 4 of this agreement. I herby aknowledge receipt of this Customer New Account Agreement Form with the Predispute Arbritration Clause therin.

All persons must sign if this is a joint account.

_____  12/20/2016
Signature of Client                          Date
Pedro J. Garcia and Felicia Paraona –Authorized Signatory
for Anticorp Management Limited- Director

Signature of Registered Representative    12/29/16   Date

Signature of Branch Manager   01-03-2017   Date

_____
Signature of Client                          Date

_____
Signature of Advisor (if applicable)    Date

Signature of Principal/Compliance Officer   1-3-17   Date

NAF JK 02-2015 V6.3.1                     5

# Exhibit "F"

# Trading Authorization/Power of Attorney and Indemnification Form: For Non-US Person Signing Outside The United States

This document constitutes a power of attorney, designed to give a designated person either limited trading authorization or full trading authorization over a brokerage account as further set forth herein.

## STEP 1. ACCOUNT INFORMATION

Financial Organization Name (hereafter "Financial Organization")
Insight Securities, Inc.

Account Title
CLODI HOLDINGS LTD.

Account Number
Q G U _ 0 3 4 0 4 5

## STEP 2. AUTHORIZATION

The undersigned hereby authorizes the following individual, TOTAL ADVISORS LLC ,
(whose information appears below), as his or her authorized agent to buy, sell (including short sales) and trade in stocks, bonds, options contracts and any other securities and/or commodities and/or contracts relating to the same on margin or otherwise in accordance with the terms and conditions of Financial Organization for his or her account and risk and in the undersigned's name or number on Financial Organization's books. In addition, the undersigned hereby specifically authorizes the agent to make transactions, which would result in uncovered short positions in options contracts or in the uncovering of any existing short position in options contracts. The undersigned hereby agrees to indemnify and hold Financial Organization and its clearing firm, Pershing LLC, harmless from, and to pay Financial Organization and/or Pershing LLC promptly on demand of, any and all losses arising therefrom or debit balance due thereon. This Trading Authorization/Power of Attorney and Indemnification shall not terminate in the event of the disability or incapacity of the undersigned.

Full trading authorization gives a designated person the power to place orders in an account, request disbursements and make inquiries concerning the account, such as obtaining account balances. Limited trading authorization gives a designated person the above powers, excluding the ability to request disbursements.

NOTE: By giving your agent full trading authorization, you are authorizing your agent to make gifts or other transfers of your money or other property from your account during your lifetime, without restriction, to any one or more persons, **including the agent himself or herself.** Granting such a power to your agent gives your agent the authority to take actions which could significantly reduce your property or change how your property is distributed at your death.

TAUTH

©2013 Pershing LLC. Pershing LLC, member FINRA, NYSE, SIPC, is a wholly owned subsidiary of
The Bank of New York Mellon Corporation (BNY Mellon). Trademark(s) belong to their respective owners

## Trading Authorization: Non-US

Account Number | Q | G | U | 0 | 3 | 4 | 0 | 4 | 5 |

**Please check one of the following boxes to indicate whether you want your agent to have limited trading authorization or full trading authorization:**

☑ **Limited Trading Authorization.** In all such purchases, sales or trades, Financial Organization is authorized to follow the instructions of the authorized agent in every respect concerning the undersigned's account with Financial Organization, and he or she is authorized to act for the undersigned and on the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do with respect to such purchases, sales or trades, as well as with respect to all other things necessary or incidental to the furtherance or conduct of such purchases, sales or trades. Limited trading authorization does not permit the authorized agent to redeem or withdraw assets from the undersigned's account.

☐ **Full Trading Authorization.** Financial Organization is authorized to follow the instructions of the authorized agent in every respect concerning the undersigned's account with Financial Organization, and to make deliveries of securities and payment of moneys, without restriction, to any one or more persons **(specifically including the agent himself or herself)** as he or she may order and direct. In all matters and things aforementioned, as well as in all other things necessary or incidental to the furtherance or conduct of the account of the undersigned, the authorized agent is authorized to act for the undersigned and on the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do. The agent must exercise this authority pursuant to the undersigned's instructions, or otherwise for purposes which the agent reasonably deems to be in the principal's best interest.

### STEP 3. REVOCATION

This document does not revoke any other powers of attorney that the undersigned has previously executed, unless the undersigned has specified otherwise in the box below.

### STEP 4. INDEMNIFICATION

The undersigned hereby ratifies and confirms any and all transactions with Financial Organization or Pershing LLC heretofore or hereafter made by the aforesaid agent for the undersigned's account. This Trading Authorization/Power of Attorney and Indemnification is also a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to Financial Organization and delivered to Financial Organization's office at its address, but such revocation shall not affect any liability in any way resulting from transactions initiated prior to such revocation. This Trading Authorization/Power of Attorney and Indemnification shall inure to the benefit of Financial Organization and Pershing LLC and of any successor firm or firms irrespective of any change or changes at any time in the personnel thereof for any cause whatsoever, and of the assigns of Financial Organization, Pershing LLC or any successor firm.

## Trading Authorization: Non-US

Account Number  Q  G  U – 0  3  4  0  4  5

### STEP 5. ACKNOWLEDGMENT AND SIGNATURES

**Account Owner/Principal**

Print Name
AMICORP MANAGEMENT LIMITED

Signature Pedro J. Garcia and Felicia Parsons- Authorised Signatories

Date
1  2  –  2  0  –  2  0  1  6
Please indicate the town/city and country where this document was signed

**Joint Account Owner/Principal (if applicable)**

Print Name

Signature

Date
   –     –
Please indicate the town/city and country where this document was signed

**Authorized Agent's Signature and Acknowledgment of Appointment**

It is not required that the principal and the agent(s) sign at the same time, nor that multiple agents sign at the same time. I/we, , have read the foregoing Power of Attorney. I am/we are the person(s) identified therein as agent(s) for the principal named therein. I/we acknowledge my/our legal responsibilities to the principal.

Agent's Name
FRANCISCO NERI

Signature

Date
1  2  –  2  0  –  2  0  1  6

Address
ALCALA 128

City
MADRID

State

Zip/Postal Code

Province/County/Subdivision

Country
ESPAÑA

Social Security/Tax ID Number

Co-Agent's Name

Signature

Date
   –     –

Address

City

State

Zip/Postal Code

Province/County/Subdivision

Country

Social Security/Tax ID Number

© 2013 Pershing LLC. Pershing LLC, member FINRA, NYSE, SIPC, is a wholly owned subsidiary of The Bank of New York Mellon Corporation (BNY Mellon). Trademark(s) belong to their respective owners.

# Exhibit "G"

**CLODI HOLDINGS LTD**
**Marcy Building 2nd Floor**
**Purcell State Tortola, BVI**

8 March 2018

Insight Securities Inc

600 Central Avenue Ste. 265
Highland Park, IL 60035

**Re: Transfer from account QGU-034045 of Clodi Holding Limited**

Dear Sirs,

Please accept this letter as your written authorisation to transfer the following securities from
account number **QGU-034045** held in the name of **Clodi Holdings Limited** to the following details:

| | | |
|---|---|---|
| US94974BFU98 | WFC 2 1/8 04/22/19 | 810,000 |
| US61746BDM54 | MS 2 1/2 01/24/19 | 810,000 |
| US48127HAA77 | JPM 2.2 10/22/19 | 810,000 |
| US94974BFQ86 | WFC 2.15 01/15/19 | 810,000 |
| US06051GFD60 | BAC 2.65 04/01/19 | 800,000 |
| XS1246650862 | IACAPT 0 ¼ 07/05/35 | 1,100,000 |

EC 44382

FFC CLODI HOLDINGS LTD  Y  ACC # AP2423

TD 3/8/18

SD 3/9/18

Thank you very much for your cooperation.

Yours sincerely,

**Clodi Holdings Limited**
**Rep by: Amicorp Management Limited**
Title: Director
Rep by: Pedro J. Garcia
Title:    Authorized Signatory

**Clodi Holdings Limited**
**Rep by: Amicorp Management Limited**
Title: Director
Rep by:    Felicia Parsons
Title:    Authorized Signatory

# Exhibit "H"

**CLODI HOLDINGS LTD**
**Marcy Building 2nd Floor**
**Purcell State Tortola, BVI**

15 March 2018
Insight Securities Inc
600 Central Avenue Ste. 265
Highland Park, IL 60035

**Re: Transfer from account QGU-034045 of Clodi Holding Limited**

Dear Sirs,

Please accept this letter as your written authorisation to transfer the following securities from
account number **QGU-034045** held in the name of **Clodi Holdings Limited** to the following details:

| | | |
|---|---|---|
| US87927VAF58 | 150,000.00 | TELECOM ITALIA CAP GTD SR NT 6.375% 11/15/33 B/E DTD 05/15/04 N/C |
| USG2585XAA75 | 100,000.00 | CSN ISLANDS XII CORP NOTES 2010 GTD REG S 7.000% 09/23/88 |
| US852060AD48 | 100,000.00 | SPRINT CAP CORP NT 6.875% 11/15/28 B/E DTD 11/16/98 N/C |
| US472319AC60 | 150,000.00 | JEFFERIES GROUP INC NEW FXD RT SR DEB 6.250% 01/15/36 |
| US78463X2027 | 4,350.00 | SPDR INDEX SHS FDS EURO STOXX 50 ETF |
| US1729674242 | 3,100.00 | CITIGROUP INC COM NEW ISIN#US1729674242 |
| US013817AQ48 | 100,000.00 | ALCOA INC SR NTS 5.870% 02/23/22 |

EUROCLEAR: EC 44382
DTC: DTC# 987 FFC: **BJ 60** FOR A/C#: GLOBAL PLUS ACCT
TD: MARCH 15, 2018  SD: MARCH 16, 2018
FFC  CLODI HOLDINGS LTD  Y  ACC # AP2423

Thank you very much for your cooperation.
Yours sincerely,

**Clodi Holdings Limited**
**Rep by: Amicorp Management Limited**
Title: Director
Rep by: Pedro J. Garcia
Title:   Authorized Signatory

**Clodi Holdings Limited**
**Rep by: Amicorp Management Limited**
Title: Director
Rep by:   Felicia Parsons
Title:     Authorized Signatory

# Exhibit "I"



Eric L. Lewis
202 659 7203
eric.lewis@lbkmlaw.com

**VIA EMAIL**

July 2, 2018

Mr. Carlos Legaspy
Insight Securities, Inc.
600 Central Avenue, Suite 265
Highland Park, IL 60035
Email: carlos@insightamericas.net

  Re: **Clodi Holdings Ltd.**

Dear Mr. Legaspy:

  This firm represents Diego Alejandro Saul Romay, ultimate beneficiary of the Docil Trust and beneficial owner of Clodi Holdings Ltd. ("Clodi"), which holds a brokerage account at Insight Securities, Inc. ("Insight") (account number QGU-034045) (the "Clodi account"). We write further to our letter of June 27, 2018, to request that you take all necessary measures as soon as possible to reclaim to the Clodi account, pursuant to FINRA Rule 11720, the securities that were improperly delivered from this account on March 8, 2018 and March 15, 2018, because the delivery of securities out of the Clodi account was unauthorized and constituted a theft of the securities from the Clodi account. I have reason to believe that the securities were transferred to the account at State Street of Deutsche Bank Trust Company ("Deutsche Bank") in New York.

  We request on behalf of Mr. Romay that you immediately take all steps necessary to accomplish this reclamation, including providing the following information to Deutsche Bank with copy to our firm:

1. Name of company securities are to be returned to
2. Name of company returning securities
3. Actual date securities were delivered
4. Original face amount of securities
5. Security type and full description including ISIN Code, Cusip, Coupon, Maturity date
6. Explanation of reason for reclamation

1899 Pennsylvania Avenue, NW | Suite 600 | Washington, DC 20006 | t 202 833 8900 | f 202 466 5738

WASHINGTON  NEW YORK  LONDON  BUENOS AIRES

lbkmlaw.com



Mr. Carlos Legaspy
July 2, 2018
Page 2

7.     Full name of person requesting the reclamation
8.     Telephone number of reclaiming party
9.     Name and telephone number of party that received the reclamation
10.    Signature of the party that delivered securities

Please contact Pascal Landrove at Deutsche Bank regarding the reclamation. Her contact information follows:

Pascal Landrove
Managing Director | Head of Latam Miami
Deutsche Bank Wealth Management
Deutsche Bank Trust Company, N.A.
600 Brickell Avenue
Suite 2050
Miami, FL 33131
Tel. +1 305 577 6612
pascal.landrove@db.com

We look forward to receiving confirmation that the securities will be returned to the Clodi account. To the extent that the reclamation request is unsuccessful, we request a full explanation of the reasons for its failure and how you will remedy this situation.

Sincerely,

Eric L. Lewis

WASHINGTON    NEW YORK    LONDON    BUENOS AIRES

lbkmlaw.com